United States District Court
Southern District of Texas
**ENTERED**
June 13, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARRETT WILLIAM NEE, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-4192 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate represented by retained counsel, filed a section 2254 habeas petition challenging his conviction for evading arrest or detention causing death. Respondent filed a motion for summary judgment (Docket Entry No. 7), to which petitioner filed a response (Docket Entry No. 8).

Having reviewed the motion, the response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this lawsuit for the reasons shown below.

### *Background and Claims*

Petitioner was convicted of evading arrest or detention causing death in Montgomery County, Texas, and was sentenced to fifteen years' incarceration in January 2018. The conviction was affirmed on appeal, *Nee v. State*, No. 09-18-00077-CR, slip op. (Tex. App.SBeaumont, pet. ref'd), and the Texas Court of Criminal Appeals refused discretionary review in February 2020.

Petitioner's application for state habeas relief was denied by the Texas Court of Criminal Appeals on December 22, 2021, without a written order on findings of the trial court without a hearing and on the court's independent review of the record.

Petitioner filed the instant federal habeas petition on December 28, 2021, raising the following claims for relief:

1.      The State failed to disclose a policy manual in violation of *Brady*.

2.      Trial counsel was ineffective in

    a.      failing to investigate police procedures;

    b.      failing to object to inadmissible hearsay testimony;

    c.      failing to introduce evidence of petitioner's mental illness at guilt/innocence; and

    d.      failing to raise a temporary insanity defense at punishment based on voluntary intoxication.

3.      Appellate counsel was ineffective in failing to challenge the sufficiency of the evidence.

4.      Cumulative ineffective assistance of counsel.

Respondent contends that these claims have no merit and should be dismissed.

### *Factual Background*

The intermediate court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction:

> A police pursuit of a person evading arrest or detention ended with a motor vehicle collision involving the pursuing patrol vehicle and a sport utility vehicle containing seven members of the Hilario family returning from a Father's Day celebration. Sergeant Stacey Baumgartner perished from

injuries he sustained in the collision.   Garrett William Nee appeals a judgment of conviction and fifteen-year sentence for evading arrest or detention with a motor vehicle resulting in death.

*   *   *   *

Sergeant Baumgartner responded to a call that a man was exposing himself to teenagers in a gas station parking lot. An observer directed the officer to Nee, who was sitting in his vehicle. Nee admitted he had been drinking alcohol. When the observer directed Sergeant Baumgartner to a spot in the parking lot where Nee urinated in public, Nee sped away in his vehicle. Sergeant Baumgartner returned to his patrol car and pursued Nee's vehicle in a high-speed chase. The patrol car's emergency overhead lights and siren were activated as the vehicles approached an intersection. Nee's vehicle proceeded through the intersection without incident, but the Hilario family's sport utility vehicle collided with Sergeant Baumgartner's patrol car. The crash rolled the patrol vehicle and pushed it into a concrete light pole, and children from the Hilario family's vehicle were ejected upon impact.

According to the State's accident reconstruction expert, Trooper Joseph Taska, data recovered from the patrol vehicle's computer system revealed the officer was traveling over sixty miles-per-hour twenty seconds before impact and fifty-five miles-per-hour just before impact. The recorded throttle reduced from 93.5% about two seconds before the accident to 5% on impact, which in Trooper Taska's opinion reflected that Sergeant Baumgartner applied the brakes before impact.

Nee's accident reconstruction witness, Cam Cope, testified that he used crash data retrieval to conclude that Sergeant Baumgartner's vehicle was traveling sixty-six miles-per-hour. According to Cope, Sergeant Baumgartner died as a result of the impact of his head on the passenger door. Cope offered his opinion that Sergeant Baumgartner would have remained in his seat if he had been wearing his seat belt. According to Cope, the Hilario's vehicle would not have struck the patrol car if Sergeant Baumgartner had braked slightly before he entered the intersection.

Dr. Katheryn Pinneri, a forensic pathologist, testified that Sergeant Baumgartner suffered multiple injuries that could have independently caused his death. According to Dr. Pinneri, the transection of his aorta would have occurred even if the officer was wearing a seatbelt.

3

Department of Public Safety Trooper Christopher Lucchesi investigated the accident. He identified Nee as the person on the scene who identified himself as the person Sergeant Baumgartner had been chasing. Trooper Lucchesi read Nee his Miranda rights before questioning him. Nee explained that he had been out drinking because he had marital issues. Nee exhibited all six clues on the horizontal gaze nystagmus test. Nee refused to perform a field sobriety test and he was arrested for driving while intoxicated. Trooper Lucchesi then obtained a search warrant for a sample of Nee's blood. Trooper Lucchesi stated that the factors he identified in his initial crash report included Nee evading in a motor vehicle, Sergeant Baumgartner disregarding a red light, and Hilario failing to yield right of way to an emergency vehicle.

A toxicology chemist, Heidi Christensen, testified without objection that Nee's blood sample test results revealed a blood alcohol concentration of 0.161. Presented with a hypothetical situation in which a subject who claimed to have consumed only light beer provided a sample measuring .161 blood alcohol concentration at 10:00 p.m., Christensen replied that she would need additional information, including the subject's gender, weight and height, to determine the approximate number of drinks he had consumed. Provided a hypothetical 6'3" male weighing 230 pounds, Christensen stated the subject would have had to have approximately ten to eleven light beers in his system at the time of the blood draw. She added that for the subject to have been below .08 blood alcohol concentration at 7:30 p.m., at the time of the stop, he would have had to drink six to ten of those beers in the thirty minutes just prior to the stop. On cross-examination, Christensen stated that she was told that Nee ate a pork sandwich at lunchtime, and she opined that information would not impact her calculations.

*Nee*, slip op. at 2–5 (footnotes omitted).

### *Legal Standards*

*Habeas Review*

This petition is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state

4

adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409.   In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Richter*, 562 U.S. at 102.  As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the

5

state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–103 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31. This presumption of correctness extends not only to express factual findings, but also to implicit or unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018). Contrary to petitioner's assertions, these standards apply to the instant federal habeas proceeding.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to

6

show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.   Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.   *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Brady Violation*

Petitioner claims that the State failed to disclose a newer policy manual than the 2012 one he received through pretrial discovery, and that the newer manual would have provided mitigating evidence as to when an officer should and should not engage in pursuit.   He argues that this failure to disclose violated *Brady v. Maryland*, 373 U.S. 83 (1963).

In rejecting petitioner's *Brady* claim, the trial court on collateral review expressly found that:

> 6.   The applicant has failed to show the existence of a Patton Village Police Department policy manual newer than the one he received in discovery.

7

7.     The applicant has failed to show that the State withheld any exculpatory evidence.

(Docket Entry No. 6-29, p. 64.)  The trial court further concluded that the State did not violate petitioner's due process rights by withholding exculpatory evidence. *Id*., p. 65. The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact in denying habeas relief.  (Docket Entry No. 6-26.)

To establish a *Brady* violation, a petitioner must prove that (1) the prosecution suppressed evidence; (2) the evidence was favorable; (3) the evidence was material to either guilt or punishment; and (4) discovery of the favorable evidence was not the result of a lack of due diligence.  *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).

Here, petitioner asserts that the State produced through pretrial discovery a 2012 Patton Village Police Department policy manual, but that the trial court excluded the evidence because it was unclear whether it applied to Baumgartner's actions in 2016. Petitioner posits that a newer policy manual may have shown that Baumgartner's actions in entering the intersection during the incident were contrary to established policy for purposes of showing negligence.  However, petitioner's *Brady* claim fails for the precise reasons found by the state habeas court:  petitioner does not establish the actual existence of a newer policy manual that applied to the 2016 incident, nor does he show that a newer policy manual would have been favorable and material to petitioner as to guilt or punishment.  Although petitioner argues at length how a different policy manual *may* have contained policies favoring petitioner's defense, the existence of such policy manual

8

and what it might have provided is nothing more than speculation at this point. Petitioner's assertions are conclusory, speculative, and insufficient to raise a genuine issue of material fact precluding summary judgment.

The state court on collateral review rejected petitioner's claim for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of petitioner's *Brady* claim.

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id*. at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong

9

presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id*.

Petitioner contends that trial counsel was ineffective in the following particulars.

*Failure to Investigate*

Petitioner claims that trial counsel failed to investigate adequately police procedures which Baumgartner was required to follow at the time of the offense. He contends that, had counsel undertaken an adequate investigation, he would have discovered a Patton Village Police Department policy manual that supported his defense

that Baumgartner's death was a direct result of the officer's own failure to follow the policy manual.

In rejecting petitioner's claim, the state court on collateral review made the following relevant findings of fact:

> 6.    The applicant has failed to show the existence of a Patton Village Police Department policy manual newer than the one he received in discovery.

*    *    *    *

> 8.    The applicant has failed to show what the applicant's attorney should have discovered from a more thorough investigation.

> 9.    The applicant's jury heard testimony that the Transportation Code advises against the manner in which Baumgartner pursued the applicant.

*    *    *    *

> 11.   [Trial counsel] thoroughly investigated the facts and circumstances of the applicant's case.

(Docket Entry No. 6-29, p. 64.)  The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact in denying habeas relief.  (Docket Entry No. 6-26.)

It is well established that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.  A defendant who alleges a failure to investigate  on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.  *Adekeye v.*

11

*Davis*, 938 F.3d 678, 683 (5th Cir. 2019); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner asserts here that, had counsel undertaken an adequate investigation, he would have discovered a Patton Village Police Department policy manual that supported his defense.  As with petitioner's *Brady* claim, nothing in the record before this Court shows that such a policy manual existed and that it would have been discovered through proper investigation.  An ineffective assistance of counsel claim based on speculation or conclusional rhetoric will not warrant habeas relief.  *Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support his claim that counsel was ineffective for failing to investigate and present evidence).  Nor does petitioner establish that, but for counsel's failure to undertake an adequate investigation, the results of the trial would have been different. This is self evident; petitioner has not shown that such a policy manual exists, thus he cannot affirmatively show what the manual stated and how it would have benefitted his defense.

Moreover, petitioner does not establish the element of actual prejudice under *Strickland*.  That is, he does not demonstrate a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. This is particularly evident in light of the state court's finding that the jury in petitioner's trial "heard testimony that the Transportation Code advises against the manner in which Baumgartner pursued the applicant."  (Docket Entry No. 6-29, p. 64.)

The court on collateral review rejected petitioner's claim for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.   Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of counsel.

*Inadmissible Hearsay*

Petitioner next asserts that trial counsel was ineffective in failing to object to inadmissible hearsay evidence that he told Baumgartner he had been drinking the day of the offense.

In responding to petitioner's claim of ineffective assistance, trial counsel submitted an affidavit to the state court on collateral review, wherein he testified in relevant part as follows:

> [I]t is alleged that my representation was deficient because I did not object the question asked by Sgt. Baumgartner of Garret Nee about how much alcohol had Defendant Nee consumed that day. *I did not object because the statement is not hearsay under TRE 801*. The statement was a question that was introduced to show the statement was made and not introduced to assert the truth of any matter.  It asserts no truth.  It is simply a question.

> Additionally, the State may offer out-of-court statements in evidence without violating the hearsay rule to explain why the defendant became the subject of an investigation.  There is an extraordinary number of cases that deal with the "investigation" exception.  Police have been allowed to testify to information that might otherwise be considered hearsay in order to explain the course of an investigation or there [*sic*] presence at a crime scene.  *Baumgartner's statements were introduced to show the course of the investigation that led to Nee being detained.  Nee's statements, in response, that he two beers would be considered Statements of a Party and therefore not hearsay under Rule 801.*

13

\*     \*     \*     \*

>   Further, a major part of Nee's defense was elimination of the State's theory espoused in opening statement that he was deliberately exposing himself to small children and that was his motive for fleeing.  Had the jury believed that, it would have been devastating to the Defendant.  The Defendant had continually asserted in statements that he had fled because he was afraid of his prior DWI's.  That was less harmful than if he was deviant sexual predator running from the law.  It helped negate that as a target reason and made it more believable that he ran for another reason.   The state abandoned the indecent exposure and did not argue it in closing. The evidence was admissible because of the aforementioned authorities.

(Docket Entry No. 6-29, pp. 11, 14, emphasis added, citations omitted.)

In rejecting petitioner's claim as to the alleged hearsay, the state court on collateral review made the following relevant findings of fact:

>   4.     The Court is familiar with the performance of the applicant's attorney, [J.L.], who is well qualified to represent defendants in felony cases.
>
>   5.     [Trial counsel] has submitted a credible affidavit in response to the applicant's claims of deficient performance.

\*     \*     \*     \*

>   12.     [Trial counsel] made a reasonable strategic decision not to object on hearsay grounds to evidence that Baumgartner asked the applicant how much he had to drink, and the applicant's response to that question.
>
>   13.     [Trial counsel] made a reasonable strategic decision not to object to evidence that the applicant was intoxicated at the time of the offense and had two prior convictions for driving while intoxicated.

*Id*., pp. 63–64.  Further, the state court on collateral review made the following relevant conclusions of law:

14

3.   Michael Hennigan's testimony on page twenty-seven of the third volume of the reporter's record, lines twenty-one through twenty-four, about what Baumgartner asked the applicant and the applicant's response did not contain inadmissible hearsay. *See* TEX. R. EVID. 801(d); 801(e)(2)(A).

4.   Evidence that the applicant was intoxicated was admissible as same transaction contextual evidence and as evidence of the applicant's motive for fleeing from Baumgartner.  *See* TEX. R. EVID. 404(b)[.]

*Id.*, p. 65 (citation omitted). The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact in denying habeas relief.  (Docket Entry No. 6-26.)

As shown, the state court determined as a matter of state law that the complained-of testimony was not inadmissible hearsay.  These determinations of state law cannot be disturbed by this Court. *See Charles v. Thaler*, 629 F.3d 494, 500–501 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law.").  Federal habeas courts do not sit as a "super state supreme court" in such a proceeding to review errors under state law.  *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991). The testimony here was admissible, and counsel has no duty to make meritless objections. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").  Petitioner fails to demonstrate deficient performance and prejudice in this instance.

The state court on collateral review rejected petitioner's claim for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts

based on the evidence in the record.   Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of counsel.

*Mental Illness*

Petitioner next argues that counsel should have introduced evidence of petitioner's bi-polar disorder at guilt/innocence to negate the element of intent. According to petitioner, he lacked the requisite intent to commit the offense, particularly due to his having skipped his medication for five days prior to the criminal offense.

In responding to this claim on state collateral review, trial counsel submitted an affidavit to the state court, wherein he testified as follows:

> I thoroughly investigated and researched the Defendant's psychological background.  Nee had made statements to the officers about being Bi-Polar and had been prescribed medication to treat it.  As a result, I sought a continuance from the Court to investigate the issue after receiving the psychological information from family members. One of the reasons was that the prior attorneys had not issued a subpoena to Northwest Diagnostic Clinic, which had possession of relevant records nor had they investigated the Defendant's mental health issues. The continuance was granted.  I retained a clinical psychologist, Tom Gorsuch PHD with extensive experience in identifying and treating mental health disorders.  His expert testimony was presented at punishment during the trial.  Dr. Gorsuch had reviewed records and other evidence in preparation for his testimony.  At no time did Dr. Gorsuch who interviewed the Defendant and reviewed the evidence reach such a conclusion.
>
> It was clear why the Defendant ran from Officer Baumgartner by his own statements.  He was scared because of his prior DWI's.

(Docket Entry No. 6-29, pp. 14–15.)

In rejecting petitioner's claim, the state court on collateral review made the following relevant findings of fact:

16

4.      The Court is familiar with the performance of the applicant's attorney, [J.L.], who is well qualified to represent defendants in felony cases.

5.      [Trial counsel] has submitted a credible affidavit in response to the applicant's claims of deficient performance.

\*      \*      \*      \*

10.     [Trial counsel] thoroughly investigated the applicant's mental health history.

11.     [Trial counsel] thoroughly investigated the facts and circumstances of the applicant's case.

\*      \*      \*      \*

14.     The applicant has failed to show that due to a mental disease, he did not know that he was fleeing from Baumgartner.

15.     [Trial counsel] made a reasonable strategic decision not to introduce the applicant's mental health history at the guilt phase of trial.

\*      \*      \*      \*

17.     The applicant returned to the crash scene after the pursuit had concluded.

18.     The applicant told law enforcement following the crash that he fled from Baumgartner because he was worried about his prior convictions for driving while intoxicated.

19.     The applicant's claim—made to his mental health expert in preparation for filing his post-conviction application for a writ of habeas corpus—that he does not remember the events of the pursuit and crash is not credible.

*Id*., pp. 63–65.  The state trial court further made the following relevant conclusions of

law:

17

4.  Evidence that the applicant was intoxicated was admissible as same transaction contextual evidence and as evidence of the applicant's motive for fleeing from Baumgartner. *See* TEX. R. EVID. 404(b).

\* \* \* \*

6.  The applicant has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel at trial.

*Id.*, pp. 65–66, citations omitted.  The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact in denying habeas relief.  (Docket Entry No. 6-26.)

Nothing in the record before this Court, either during trial, on collateral review, or in the instant proceeding, suggests that petitioner's bipolar disorder caused him to flee from Baumgartner or otherwise negates the element of intent. An ineffective assistance of counsel claim based on speculation or conclusional rhetoric will not warrant habeas relief. *Lincecum*, 958 F.2d at 1279.  To the contrary, petitioner admitted to officers following his arrest that he fled because he was concerned about his two prior convictions for driving while intoxicated.  (4 R.R. 65.)  Moreover, the trial evidence shows that petitioner returned to the scene and explained to officers why he had fled, indicating that he knew he had fled from Baumgartner.

The state court on collateral review rejected petitioner's claim for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of counsel.

18

*Temporary Insanity*

Petitioner further argues that trial counsel failed to raise a defense of temporary insanity at punishment based on voluntary intoxication.

In responding to this claim on state collateral review, trial counsel submitted an affidavit to the state court, wherein he testified as follows:

> I thoroughly investigated and researched the Defendant's psychological background. Nee had made statements to the officers about being Bi-Polar and had been prescribed medication to treat it. As a result, I sought a continuance from the Court to investigate the issue after receiving the psychological information from family members. One of the reasons was that the prior attorneys had not issued a subpoena to Northwest Diagnostic Clinic, which had possession of relevant records nor had they investigated the Defendant's mental health issues. The continuance was granted. I retained a clinical psychologist, Tom Gorsuch PHD with extensive experience in identifying and treating mental health disorders. His expert testimony was presented at punishment during the trial. Dr. Gorsuch had reviewed records and other evidence in preparation for his testimony. At no time did Dr. Gorsuch who interviewed the Defendant and reviewed the evidence reach such a conclusion.
>
> It was clear why the Defendant ran from Officer Baumgartner by his own statements. He was scared because of his prior DWI's. The notion that he was temporarily insane was not plausible. Further, the Defendant's actions in returning to the scene showed that intent could not be negated by arguing temporary insanity.

(Docket Entry No. 6-29, pp. 14–15.)

In rejecting petitioner's claim, the state court on collateral review made the following relevant findings of fact:

> 4.   The Court is familiar with the performance of the applicant's attorney, [J.L.], who is well qualified to represent defendants in felony cases.

19

5.      [Trial counsel] has submitted a credible affidavit in response to the applicant's claims of deficient performance.

\*     \*     \*     \*

10.    [Trial counsel] thoroughly investigated the applicant's mental health history.

\*     \*     \*     \*

17.    The applicant returned to the crash scene after the pursuit had concluded.

18.    The applicant told law enforcement following the crash that he fled from Baumgartner because he was worried about his prior convictions for driving while intoxicated.

19.    The applicant's claim—made to his mental health expert in preparation for filing his post-conviction application for a writ of habeas corpus—that he does not remember the events of the pursuit and crash is not credible.

20.    The applicant has failed to show that due to voluntary intoxication he did not know that fleeing from Baumgartner was wrong.

21.    The applicant was not temporarily insane due to voluntary intoxication at the time he fled from Baumgartner.

*Id.*, pp. 63–65.  The state trial court further made the following relevant conclusions of law:

5.      The applicant was not entitled to a defense of temporary insanity due to voluntary intoxication in the punishment phase of trial.

6.      The applicant has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel at trial.

*Id.*, pp. 65–66, citations omitted.  The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact in denying habeas relief.  (Docket Entry No. 6-26.)

Petitioner cannot establish deficient performance of counsel or actual prejudice, as the state court determined that he was not entitled to a defense of temporary insanity due to voluntary intoxication under state law.  This Court may not disturb the state court's determinations of state law.  *See Charles*, 629 F.3d at 500–501 (5th Cir. 2011); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991).  Petitioner does not show that, had counsel raised temporary insanity based on voluntary intoxication, the trial court would have reversibly erred in denying the issue.  Petitioner establishes neither deficient performance nor actual prejudice under *Strickland.*

The state court on collateral review rejected petitioner's claim for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.   Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of counsel.

### *Ineffective Assistance of Appellate Counsel*

To establish that counsel's performance was deficient in the context of an appeal, a petitioner must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal; that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  If the petitioner succeeds in such a showing, he must

then establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal."

Appellate counsel is not deficient for failing to raise every non-frivolous issue. *See Ries v. Quarterman*, 522 F.3d 517, 531–32 (5th Cir. 2008); *Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003). Appellate counsel will only be considered deficient for failing to "research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (internal citation marks and quotation omitted). "Solid, meritorious arguments based on directly controlling precedent should be brought to the [appellate] court's attention." *Id*. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).

Petitioner argues in this case that appellate counsel should have argued on appeal that the evidence was insufficient because the State failed to prove petitioner knew Baumgartner was trying to arrest or detain him.

In rejecting this claim, the state court on collateral review made the following relevant findings of fact:

22.   The applicant's appellate attorney argued that the evidence was insufficient to support the applicant's conviction, but the [intermediate state court of appeals] concluded that the evidence was sufficient.

(Docket Entry No. 6-29, p. 65.)  The state court further concluded that petitioner failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of appellate counsel.  *Id.*, p. 66. The Texas Court of Criminal Appeals expressly relied on the trial court's findings of fact in denying habeas relief.  (Docket Entry No. 6-26.)

To obtain relief, petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of petitioner's appeal would have been different.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Higgins v. Cain*, 720 F.3d 255, 260–61 (5th Cir. 2015).

Petitioner in this instance asserts in conclusory fashion that, had appellate counsel challenged the sufficiency of the evidence as to petitioner's knowledge that Baumgartner was attempting to detain him, petitioner would have prevailed on appeal.  Again, "absent evidence in the record," this Court cannot consider a habeas petitioner's bald assertions on a critical issue, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018).  For this reason alone, petitioner's claims could be denied. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.").

23

The record shows that appellate counsel challenged the sufficiency of the evidence on direct appeal.   In overruling the issue, the intermediate court of appeals held in relevant part as follows:

> The undisputed evidence at trial established that Sergeant Baumgartner was actively engaged in pursuing Nee when the collision between the patrol car and the Hilario vehicle occurred. *The jury could rationally find that Nee intentionally fled from Sergeant Baumgartner, a person Nee knew was a peace officer attempting lawfully to arrest or detain Nee*, and that Sergeant Baumgartner died as a direct result of his attempt to apprehend Nee while Nee was in flight. We conclude the evidence is legally sufficient to support the conviction.

*Nee*, slip op. at 9 (emphasis added).   Indeed, the state court on collateral review expressly found that petitioner "told law enforcement following the crash that he fled from Baumgartner because he was worried about his prior convictions for driving while intoxicated."  (Docket Entry No. 6-29, p. 65.)

Thus, the intermediate court of appeals found that the evidence showed petitioner knew Baumgartner was a peace officer attempting to arrest or detain him, and that petitioner intentionally fled from Baumgartner.   The record refutes petitioner's argument that, but for counsel's failure to challenge the State's failure to prove petitioner knew the officer was trying to detain him, he would have prevailed on appeal.   Petitioner fails to establish deficient performance and actual prejudice under *Strickland.*

The state court on collateral review rejected petitioner's claim for habeas relief. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts

based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim for ineffective assistance of appellate counsel.

### Cumulative Ineffective Assistance

Petitioner argues that the cumulative effect of trial and appellate counsels' errors warrants federal habeas relief. However, this Court has found no error on the part of counsel. The Fifth Circuit has made clear that a cumulative error analysis is only appropriate where there is error to cumulate. *Derden v. McNeel*, 938 F.2d 605, 609 (5th Cir. 1991). Because there are no errors to cumulate, petitioner's claim of cumulative error has no merit.

### Conclusion

The motion for summary judgment (Docket Entry No. 7) is GRANTED and this case is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas, on June  13  , 2022.

_____
Gray H. Miller
Senior United States District Judge

25